853 F.2d 1307
 9 Employee Benefits Ca 2665
 Ann McLAUGHLIN, Secretary of the United States Department of
Labor, Plaintiff,
v.
Oscar C. LINDEMANN, et al., Defendants.
Roy A. HERBERGER, Trustee of the Lee Optical and Associated
Companies Pension Plan, Plaintiff-Appellee,
v.
Theodore SHANBAUM, Defendant-Appellant.
 No. 87-1556.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 9, 1988.
 
 Maelissa R.M. Watson, William C. Wolffarth, Dallas, Tex., for defendant-appellant.
 Payne & Vendig, Linda S. Aland, Dallas, Tex., for Bernice Shanbaum.
 Richard A. Dean, Patricia M. Reed, Alter, Hadden & Witts, Dallas, Tex., for Herberger.
 Appeal from the United States District Court for the Northern District of Texas.
 Before VAN GRAAFEILAND,* JOHNSON and JOLLY, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is a companion appeal to that of Whitfield v. Lindemann, 853 F.2d 1298 (5th Cir. 1988) (hereafter "Whitfield "), the opinion in which is being filed concurrently herewith. The pertinent facts are set forth in that opinion and are incorporated by reference herein.
 
 
 2
 The judgment in favor of the Pension Plan and against Shanbaum, Klepak and Lindemann was in the amount of $2,083,628. As stated in Whitfield, Shanbaum does not appeal from that judgment. He does appeal, however, from an order of the district court authorizing Roy Herberger, the successor trustee of the Pension Plan, to offset against the above award $3,521.88 in monthly benefits due Shanbaum under the Pension Plan. The district court rejected the trustee's attempt to offset similar payments to Shanbaum's wife, and the rejection is not challenged in this Court. Brock v. Lindemann, 689 F.Supp. 678 (N.D.Tex 1988).
 
 
 3
 The Pension Plan, as required by 29 U.S.C. Sec. 1056(d)(1), provides that benefits under the Plan may not be assigned or alienated. Indeed, the Plan sets out the proscription in greater detail than does the statute, prohibiting "anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind." The Internal Revenue Code, 26 U.S.C. Sec. 401(a)(13), also provides that "[a] trust shall not constitute a qualified trust ... unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." Because, as pointed out in Whitfield, Shanbaum's monthly benefits from the Pension Plan constitute his sole source of income, he would appear to be exactly the type of person that the proscriptions in ERISA, the Internal Revenue Code and the Plan itself were designed to protect. However, the district court allowed the offsets, relying on its prior unappealed holding that, although Shanbaum was not liable as a fiduciary for the loss suffered by the Pension Plan, he was jointly and severally liable with the trustee for those losses. The district court's creation of an exception to the above described congressional mandates is subject to de novo review in this Court. Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc., 784 F.2d 926, 929 (9th Cir.), cert. denied, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986). Concluding that the offsets should not have been allowed, we reverse.
 
 
 4
 As this Court held long ago, company-sponsored pension plans are not mere gratuities but instead are means of paying additional compensation to covered employees for work performed. Ball v. Victor Adding Machine Co., 236 F.2d 170, 173-74 (5th Cir.1956). However, prior to the enactment of ERISA, many plans contained what were known as "bad boy" clauses, pursuant to which employees could be denied this additional compensation if they were guilty of some specified improper conduct. ERISA was designed in part to prevent further enforcement of "bad boy" clauses. Ellis National Bank v. Irving Trust Co., 786 F.2d 466, 470 n. 4 (2d Cir.1986); Winer v. Edison Bros. Stores Pension Plan, 593 F.2d 307, 311 (8th Cir.1979); Vink v. SHV North America Holding Corp., 549 F.Supp. 268, 269-70 (S.D.N.Y.1982). This ban furthered Congress' primary objective, which was to ensure that "if a worker has been promised a defined pension benefit upon retirement--and if he has fulfilled whatever conditions are required to obtain a vested benefit-- ... he actually receives it." Ellis National Bank v. Irving Trust Co., supra, 786 F.2d at 471 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981)).
 
 
 5
 Congress sought to accomplish this beneficial result in two ways. First, it provided, with some minor exceptions, that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age. 29 U.S.C. Sec. 1053(a); see Fremont v. McGraw-Edison Co., 606 F.2d 752, 757-58 (7th Cir.1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); Winer v. Edison Bros. Stores Pension Plan, supra, 593 F.2d at 310-11. Second, as already pointed out, it said that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. Sec. 1056(d)(1); see United Metal Products Corp. v. National Bank of Detroit, 811 F.2d 297, 299-300 (6th Cir.1987); Ellis National Bank v. Irving Trust Co., supra, 786 F.2d at 469-72; Vink v. SHV North America Holding Corp., supra, 549 F.Supp. at 269-70.
 
 
 6
 In view of the clear congressional intent evidenced in these two statutes, courts should exercise great restraint in divesting plan beneficiaries of that which Congress decided should be vested and should not search for exceptions in the statutory plan that Congress itself did not provide. In permitting offsets in the instant case, the district court relied substantially on Crawford v. La Boucherie Bernard, Ltd., 815 F.2d 117 (D.C.Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), which permitted an offset against an unfaithful trustee who converted trust funds to his own use. Whether the holding in Crawford was proper is a matter we need not decide. Lindemann, not Shanbaum, was trustee of the Pension Plan when the radio station and microwave system were transferred. Shanbaum was held liable as a "nonfiduciary" who knowingly participated in the trustee's breach.
 
 
 7
 Moreover, the proof established no criminal conduct or fraud on the part of either Lindemann or Shanbaum. In essence, the finding of liability on the part of both was based on the overvaluation of the transferred properties, an overvaluation that was not known to either Lindemann or Shanbaum and in fact was not established until the district court accepted in toto the testimony of the Secretary's appraisers. One of the Secretary's appraisers, while conceding that the radio station had a value of around $800,000 if sold on terms, said that it was worth only $600,000 if sold for cash. The district court, without explaining why the latter figure was applicable in the instant non-purchase case, accepted it. The other appraiser produced by the Secretary conceded that the microwave system would have a value of between $900,000 and $1 million if sold on the open market to a company that could take advantage of certain tax benefits. However, he evaluated it at $525,000 for transfer to the Pension Plan which was not entitled to the same tax benefits. The district court would not permit defense counsel to ask this appraiser what the fair market value of the property would be if the Plan sold it to a third party who could enjoy the tax benefits.
 
 
 8
 It was the district court's prerogative to accept the evaluations of the Secretary's appraisers, and the district court's findings, unless clearly erroneous, are binding on this Court. We have discussed the appraisal evidence simply to show that Shanbaum was guilty of neither criminal conduct nor fraud in participating in the transfer, and the district court made no finding to the contrary. Indeed, had the district court accepted the appraisals submitted by the defendants in Whitfield, Shanbaum would not have been liable to the Pension Plan at all.
 
 
 9
 Shanbaum is over seventy years of age and has only a relatively modest life expectancy. Depriving him of his monthly pension benefits, his only income during his remaining years, will cause him harm that greatly outweighs that which the $5 million Pension Plan will suffer if payments to Shanbaum are continued. The Plan has a judgment against Shanbaum which is almost five times greater than the judgment it could have secured had it given credit for the transferred properties on the basis of the Secretary's appraisals. However, had the Plan given such lesser credit and entered a judgment for the balance, it would have collected no more than it has collected on the present judgment. Since Shanbaum has no assets, the smaller judgment would have been as uncollectible as the larger one is.
 
 
 10
 Courts should not "rewrite a statute because they might deem its effects susceptible of improvement," Badaracco v. Commissioner, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984). Under the facts of the instant case, we believe the district court should have followed the lead of those courts which hold that additional exceptions to ERISA's vesting and inalienability provisions should be created by Congress, not the courts. See, e.g., United Metal Products Corp. v. National Bank, supra, 811 F.2d at 300; Ellis National Bank v. Irving Trust Co., supra, 786 F.2d at 471; Vink v. SHV North America Holding Corp., supra, 549 F.Supp. at 273.
 
 
 11
 The district court's order authorizing offsets and awarding fees for the Plan's attorney is
 
 REVERSED
 
 
 *
 Circuit Judge of the Second Circuit, sitting by designation