**Roy A. HERBERGER, Trustee for the Lee Optical and Associated Companies Pension Plan Trust, Plaintiff–Appellee,**

v.

**Theodore SHANBAUM, Defendant–Appellant.**

No. 89–1493.

United States Court of Appeals, Fifth Circuit.

April 5, 1990.

Joe B. Abbey, Law Offices of Joe B. Abbey, Dallas, Tex., for defendant-appellant.

Patricia M. Reed, Richard A. Dean, Arter & Hadden, Dallas, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Theodore Shanbaum (Shanbaum) appeals the district court's holding that Roy Herberger (Herberger), the trustee of Shanbaum's pension plan, may offset an amount Shanbaum owes to the plan against Shanbaum's monthly pension benefits. We reverse.

I.

Shanbaum, along with Ellis Carp and Glen Auerbach, were the three principal shareholders of Lee Optical, Inc. (Lee Optical). All three served as charter trustees of the Lee Optical Pension Plan (the Pension Plan or the Plan), which was created in 1951. Shanbaum was also a beneficiary of the Plan. He is now seventy-seven years old and draws a monthly pension of $3,521.87.

Beginning in 1980, the U.S. Secretary of Labor initiated an action against Shanbaum, Carp, Lee Optical, and its subsidiary Dal–Tex, alleging violation of ERISA, 29 U.S.C. § 1109(a), in connection with their management of the Pension Plan. In 1981, that action was settled in a Consent Decree that removed Shanbaum as sole-surviving trustee and appointed Oscar Lindemann (Lindemann) as his successor. In addition, the decree ordered the Dal–Tex subsidiary of Lee Optical to pay over one million dollars in outstanding principal and interest owed to the Plan, and held Shanbaum and Carp jointly and severally liable for this sum if Dal–Tex proved unable to pay.

Soon afterward, Dal–Tex defaulted, and the Plan sought to enforce the judgment against Shanbaum and Carp. In satisfac-

tion of this debt, Lindemann accepted Shanbaum's and Carp's interests in SCP, a joint venture owned in equal shares by Shanbaum, Carp and the Plan. Later squabbling over the value of the joint venture's assets, however, resulted in a two million dollar judgment against Lindemann for breach of his fiduciary duty to the Plan. Shanbaum was held jointly liable for this sum as a "knowing and active participant[ ] in Lindemann's breach of fiduciary duty." *Whitfield v. Lindemann*, 853 F.2d 1298, 1302 (5th Cir.1988), *cert. denied sub nom, Klepak v. Dole*, — U.S. —, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989).

Herberger, plaintiff-appellee, was appointed by the court to succeed Lindemann as trustee of the Plan. By this time, Shanbaum had begun receiving his pension payments, which were his only source of income. Unable to otherwise collect the debt, Herberger sought to offset Shanbaum's monthly benefit payment against the judgment rendered against Shanbaum's in *Whitfield*. The district court allowed the offset. On appeal, however, this court noted that the judgment against Shanbaum was not for the breach of a trustee's fiduciary duty; rather, the judgment was for participation in such a breach by a nonfiduciary third party. This court held that the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d)(1), prevented the offset and reversed the district court's order. *McLaughlin v. Lindemann*, 853 F.2d 1307 (5th Cir.1988).

During the pendency of this federal litigation, an unrelated lawsuit was filed in Texas state court by W.F. deTournillon, who had at one time been an employee of the Grayson Company. Shanbaum, Carp and the Plan had been the sole shareholders of Grayson which had been liquidated in 1982. DeTournillon sought to recover salary and bonuses earned while he was an employee of Grayson, and since that corporation was defunct he sued its successors: Shanbaum, Carp's estate, and the Pension Plan.

The Pension Plan settled with deTournillon for $20,000. In September, 1986, the state court awarded the plaintiff a $168,000

judgment against Shanbaum and Carp's estate, and also awarded the Pension Plan a $20,000 indemnification judgment against Shanbaum "for the breach of his fiduciary duty as trustee" of the Plan. Again, however, the Pension Plan's judgment against Shanbaum proved uncollectible and again, Herberger sought an order from the federal district court to allow the Plan to offset the outstanding judgment against Shanbaum's monthly pension benefits. The district court entered judgment allowing the offset. Shanbaum now appeals that judgment.

## II.

Shanbaum argues that the district court erred in allowing an offset, because doing so violated the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d)(1). This provision states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." This court has not previously addressed the question of whether, despite § 1056(d)(1), a pension plan may offset a judgment against a former trustee's benefits when the judgment against the former trustee is predicated on a breach of his fiduciary duties.

This court held in *McLaughlin v. Lindemann*, 853 F.2d 1307 (5th Cir.1988), that the general rule created by the anti-alienation provision of § 1056(d)(1), prevented an offset to recover a judgment for knowing participation by a nonfiduciary third party in the breach of fiduciary duty by a plan trustee. *See also*, 26 U.S.C. § 401(a)(13) (tax code requirement that benefits under a qualified plan cannot be assigned or alienated). Based on the two statutes cited above and on 29 U.S.C. § 1053(a) (providing that an employee's pension benefit is nonforfeitable upon reaching retirement age), the *McLaughlin* court found a "clear congressional intent [that] courts should exercise great restraint in divesting plan beneficiaries of that which Congress decided should be vested." 853 F.2d at 1309. However, the court explicitly reserved the question presented by this case. *Id.*

In *Crawford v. La Boucherie Bernard*, 259 U.S.App.D.C. 2545, 815 F.2d 117, *cert. denied sub nom.*, *Goldstein v. Crawford*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), *reh. denied*, 484 U.S. 1020, 108 S.Ct. 735, 98 L.Ed.2d 683 (1988), the D.C. Circuit did carve out an exception to the general rule against alienation and allowed a judgment, predicated on breach of fiduciary duty by a plan trustee, to be offset against the trustee's pension benefits. The court gave a number of cogent reasons for its decision.

First, the court stated that the purpose of ERISA was to protect the interests of beneficiaries by establishing standards and obligations for fiduciaries and by providing remedies for breaches of such obligations. 29 U.S.C. § 1001(b). The court further explained that 29 U.S.C. § 1109(a) provided that in addition to liability for losses and restitution of wrongful profits, breaching trustees are "subject to such other equitable or remedial relief as the court may deem appropriate." Similar language is included in 29 U.S.C. § 1132(a)(3)(B) which describes the type of relief available in civil actions brought to enforce the ERISA requirements. The court concluded that provisions within ERISA gave courts broad authority to fashion remedies for redressing breaches.

Second, the *Crawford* court relied on language in ERISA's legislative history to conclude that the objective of ERISA remedial provisions was to "make applicable the law of trusts; ... to establish uniform fiduciary standards to prevent transactions which dissipate or endanger trust assets; and to provide effective remedies for breaches of trust." *Crawford*, 815 F.2d at 120, *citing* 120 Cong.Rec. S–15737, Aug. 22, 1974, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 5177, 5186. After concluding that trust law was applicable, the court cited the well established trust principle that when a trustee who is also a beneficiary of the trust breaches his fiduciary duty to the trust, the other beneficiaries can force the trustee to make good his breach out of his beneficial interest in the trust. *Id.*, *citing* Bogert, *Trusts &*

*Trustees*, § 191 at 484 (2d ed. 1979); III *Scott on Trusts* § 257 at 2201 (3d ed.1967).

Finally, the *Crawford* court addressed the anti-alienation provision directly and found that the general rule against alienability of ERISA benefits was not "immutable." The court explained that the Eleventh Circuit had carved out an exception for liabilities arising from the employee's criminal conduct towards his employer. See *St. Paul Fire & Marine Ins. Co. v. Cox*, 752 F.2d 550, 552 (11th Cir.1985). In addition, other courts had permitted garnishment of benefits to satisfy family support and community property obligations. *See, e.g., American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir.1979); *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal.1978), *aff'd*, 632 F.2d 740 (9th Cir. 1980), *cert. denied sub nom. Seafarers International Union v. Stone*, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).

Although the *Crawford* decision presents strong arguments for allowing an offset, we decline to follow it, primarily because of the Supreme Court's recent decision in *Guidry v. Sheet Metal Workers National Pension Fund, Inc.*, — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), which calls the soundness of *Crawford* into question. In *Guidry*, the Court disallowed an offset against an employee's pension benefits where the employee, who did not owe a fiduciary duty to the pension plan, was convicted of embezzling union funds. The court concluded that Congress provided no exception to the ERISA anti-alienation provision that would allow the offset. Specifically, the court stated that the remedial provisions of ERISA did not outweigh the anti-alienation provision and, therefore, did not allow a constructive trust to be imposed in favor of the union.

Although the Court expressly reserved the question of whether an offset would be allowed where the employee's liability was predicated on a breach of fiduciary duty to the plan, the Court's dicta leads us to conclude that an offset should not be allowed. The Court stated that:

As a general matter, courts should be loath to announce equitable exceptions to

804

legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

*Id.*

The Court's decision in *Guidry* so undermines the *Crawford* reasoning that we decline to follow *Crawford*. First, the *Crawford* court's reliance on ERISA's legislative history to authorize the application of general trust law to create an exception to the anti-alienation provision is no longer persuasive. The Supreme Court found no justification to create an exception to the anti-alienation provision in order to impose a constructive trust on benefits. Also, the holdings in some of the cases relied on by *Crawford* to support the proposition that the anti-alienation provision is not "immutable" were rejected by the Court in *Guidry*. For example, *Guidry* holds that an employee's criminal misconduct cannot be the basis for an offset. This is contrary to the holding in *St. Paul Fire & Marine,* 752 F.2d 550, upon which *Crawford* relied. In addition, *Guidry* recognized that "qualified domestic relations orders" are now covered by an express statutory anti-alienation exception. *Id.* at n. 18, *citing* § 104(a) of the Retirement Equity Act of 1984, 98 Stat. 1433, 29 U.S.C. § 1056(d)(3) (1982 ed. supp. V). Therefore, the domestic relations cases

cited by *Crawford* no longer support the *Crawford* court's decision to create a judicial exception to the anti-alienation provision. To the contrary, the fact that Congress amended the statute to allow this exception lends support to the notion that Congress will create exceptions where it sees fit and courts should not do so.

The only aspect of the *Crawford* reasoning that remains untouched by *Guidry* is the weighing of ERISA's remedial provisions against the anti-alienation provision. In *Guidry,* the Supreme Court held that the civil enforcement provision, 29 U.S.C. § 1132(a)(3)(B), which allows a participant, beneficiary, or fiduciary to "obtain other *appropriate equitable relief* (i) to redress ... violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," (emphasis added) was not expansive enough to allow an offset. The *Crawford* court recognized the similarity between the above language contained in § 1132(a)(3)(B) and the language contained in 29 U.S.C. § 1109(a), the specific provision applicable in *Crawford* and in this case, which allows "equitable or remedial relief as the court may deem appropriate" when a person breaches the fiduciary duties. *Crawford,* 815 F.2d at 119. Based upon *Guidry's* strict application of the anti-alienation provision, we are persuaded that the Court would not find the language in § 1109(a) expansive enough to allow an offset when the Court did not interpret equivalent language in § 1132(a)(3)(B) to allow an offset. We conclude, therefore, that Herberger should not be allowed to offset the *deTournillon* judgment against Shanbaum's pension benefits.

Because of our disposition of this appeal, we need not reach Shanbaum's two other contentions: (1) that the state court had no subject matter jurisdiction over Shanbaum's actions, therefore the state court judgment is void; and (2) that the trustee did not have authority to act on the plan's behalf.

REVERSED and RENDERED.