**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 91-3647
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

STANLEY J. GAUDET,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(July 10, 1992)

Before HILL,[1] KING and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Defendant, Stanley J. Gaudet, challenges in a number of respects the sentence the district court imposed following his entry of a guilty plea. Under the standard of review that governs Gaudet's arguments on appeal, we affirm.

I.

Gaudet pled guilty to twenty-two counts of embezzling from employee pension plans in violation of 18 U.S.C. § 664 and to a twenty-third count of embezzling union funds in violation of 29 U.S.C. § 501(c). The district court applied pre-Sentencing Guidelines law to Counts 1-18 and the Guidelines to Counts 19-23.

_____

[1]Senior Circuit Judge of the Eleventh Circuit, sitting by designation.

The court sentenced Gaudet as follows:  1) five years each on Counts 1-3; 2) 41 months each on Counts 4-18, to run concurrently with each other and with Counts 1-3; 3) 41 months each on Counts 19-23, to run concurrently with each other but consecutively to Counts 1-18.  In aggregate, Gaudet was sentenced to a total term of imprisonment of 221 months.

The district court also ordered Gaudet to make restitution of the total embezzled amount, $2,750,538.87.  To satisfy this amount, the court ordered Gaudet to relinquish the pension funds to which he is personally entitled.

At the time these acts occurred, Gaudet was the president and business agent of Local Union 11 of the Sheet Metal Workers International Association, AFL-CIO, and served as trustee for several of its employee benefit funds.  These funds were employee benefit plans under 29 U.S.C. § 1002(3) and subject to the provisions of Title I of the Employee Retirement and Income Security Act of 1974 (ERISA).  The government established that Gaudet began converting funds in 1983; that he established bank accounts into which he deposited these funds; that he engaged in at least twenty-three separate acts of embezzlement between 1983 and 1989; that he concealed his activities and the existence of the accounts from all other officers, trustees, employees and members of the union; and that he gambled away most if not all the converted funds in frequent trips to Las Vegas.  In all, Gaudet embezzled $2,710,538.87 from Local 11's employee benefit plan (Counts 1-22) and $40,000 from union funds (Count 23).

Gaudet challenges his sentence first by arguing that the district court erred in applying pre-Guidelines sentencing law to Counts 1-18. He contends that the Guidelines should have governed all twenty-three counts. He argues in the alternative that the district court erred in using the total dollar amount embezzled in all twenty-three counts to arrive at his offense level for those convictions to which the Guidelines apply. Finally, he contends that the district court's order divesting him of his pension plan to satisfy the restitution award is erroneous. We consider each argument in turn.

## II.

### A.

The district court applied pre-Guidelines sentencing law to the first eighteen counts against Gaudet and the Guidelines to Counts 19-23. Gaudet argues that the district court should have applied the Guidelines to all counts.[2] The Guidelines apply "only to offenses committed" after November 1, 1987, the Sentencing Reform Act's effective date. **United States v. White**, 869 F.2d 822, 826 (5th Cir.), cert. denied, 490 U.S. 1112 (1989). The actual acts of embezzlement underlying Counts 1-18 took place between 1983 and 1986; the embezzlements underlying Counts 19-23 occurred in 1988. Gaudet contends that the Guidelines should control his sentence on all twenty-three counts because his offense conduct constituted a continuing scheme which did not end until 1988.

---

[2] Application of the Guidelines would have saved Gaudet fifteen years of sentence and at least five years of actual imprisonment.

Courts have recognized that the Guidelines control some offenses that "straddle" the effective date of the Guidelines. That is, the Guidelines apply to offenses involving a continuing course of conduct that begins before November 1, 1987, but continues thereafter. We have found conspiracy offenses to be "straddle" crimes for the purposes of applying the Guidelines. **See e.g., White**, 869 F.2d at 826; **United States v. Devine**, 934 F.2d 1325, 1332 (5th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 954 (1992). Other courts have held that RICO may be a "straddle" offense. **See e.g., United States v. Moscony**, 927 F.2d 742, 754 (3d Cir.) (RICO is continuing offense analogous to conspiracy), <u>cert. denied</u>, 111 S.Ct. 2812 (1991); **United States v. Cusack**, 901 F.2d 29, 32 (4th Cir. 1990) (RICO is "straddle" offense to which Guidelines apply).

The question this case presents is whether embezzlement is a straddle offense so that Gaudet's sentences for offenses committed before November 1987 are nevertheless governed by the Guidelines. This circuit has not addressed this question. The First Circuit, however, has answered this question affirmatively. **United States v. Young**, 955 F.2d 99, 109 (1st Cir. 1992). Gaudet urges us to adopt the reasoning of **Young**, which suggests that, for the purposes of applying the Guidelines, the crime of embezzlement continues as long as any conduct concealing the embezzlement continues. **Id.**

Gaudet failed to object below to the district court's application of pre-Guidelines sentencing law to Counts 1-18, although the Presentence Report (PSR) gave him clear notice that the court might do just that. The PSR grouped Counts 19-23

together for the purpose of computing the offense level and applied the Guidelines to these counts. Furthermore, in calculating the applicable fine, the PSR also grouped these five counts together. A separate section of the PSR discussed the first eighteen counts. This section, entitled "Sentencing Data for Offenses Occurring Prior to November 1, 1987--Counts 1 through 18 of the Superseding Bill of Information," obviously applied pre-Guidelines rules. The PSR, therefore, plainly gave Gaudet notice that the court would consider applying pre-Guidelines law to the first eighteen counts. Because of Gaudet's failure to object to the PSR's proposed application of pre-Guidelines rules to the first eighteen counts, we review under a plain error standard.

In **United States v. Lopez**, 923 F.2d 47, 50 (5th Cir.), <u>cert. denied,</u> 111 S.Ct. 2032 (1991), we recently repeated our definition of plain error. It is error that, when "examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." **See also United States v. Vontsteen**, 950 F.2d 1086, 1089-91 (5th Cir. 1992) (en banc).

For a number of reasons, we are not persuaded that Gaudet's multiple embezzlement offenses are <u>obviously</u> "straddle" crimes. First, this circuit has never had the occasion to address this issue. Second, even if the First Circuit's reasoning in **Young** is accepted as settled law, the failure to characterize Gaudet's offenses as straddle offenses is not obvious error. Under **Young**, whether a number of embezzlements are continuing offenses depends

to some extent on the particular facts of the case.  If the court concludes that later embezzlements covered up earlier ones, it is entitled to find the offenses continuing in nature.  When a legal conclusion depends in part upon discreet factual findings and the court is never directed to those facts, its legal conclusion is almost never obviously wrong.  **Lopez**, 923 F.2d at 50.  Thus, even if we were to hold here that a series of embezzlements may under appropriate circumstances be a continuing offense and qualify as a straddle offense when committed both before and after November 1, 1987, we cannot say that the district court's failure to treat Gaudet's embezzlements as such constitutes plain error.[3]

### B.

Gaudet next complains of the court's use of the total dollar amount of money he embezzled in all twenty-three counts to arrive at the base offense level with respect to Counts 19-23.  The government argues that the total dollar amount embezzled in all counts was properly considered by the court as "relevant conduct"

---

[3]    Gaudet points out that the district court's treatment of the twenty-three acts of embezzlement was inconsistent because it treated each count as a separate and discreet offense for the purpose of sentencing, but treated them as a single, continuing offense for other purposes. Gaudet points out for the first time on appeal that Counts 1-14 were time-barred by the Statute of Limitations, 18 U.S.C. § 3282, unless some portion of the conduct underlying these offenses continued after the actual act of transferring the money to Gaudet's possession or control occurred. But Gaudet did not argue to the district court that any of his offenses were time-barred.  Thus, he did not give the district court a chance to confront this alleged inconsistency.  We are restrained by the plain error standard which compels us to conclude that Gaudet waived this issue by failing to contemporaneously object to the district court's alleged inconsistent treatment of his offenses.

under §1B1.3(a)(1) of the Sentencing Guidelines. Gaudet, on the other hand, contends that the court's inclusion of the dollar amount embezzled in Counts 1-18 to arrive at his sentence for Counts 19-23, which sentence runs consecutively to the sentence for the first eighteen counts, is an unconstitutional violation of the Double Jeopardy Clause.

**United States v. Parks**, 924 F.2d 68 (5th Cir. 1991), controls this issue. In that case, the defendant was convicted on twenty-seven counts of felonious misapplication of funds belonging to a federally insured bank, in violation of 18 U.S.C. § 656. The actions underlying the first twenty-four counts occurred before November 1, 1987, and the conduct for the remaining three occurred after that date. In calculating Parks' offense level under the Guidelines for Counts 25 through 27, the court used the total dollar amount involved in all twenty-seven counts. We held that it was within the district court's discretion to impose consecutive sentences for the pre-Guidelines and Guidelines offenses "even if it uses pre-Guideline conduct in arriving at the Guideline offense level." **Id.**, at 71. We find no grounds on which to distinguish today's case from **Parks**.

### III.

Finally, Gaudet asserts that the district court erred in ordering him to relinquish his personal pension to satisfy the restitution order.[4] Once again, however, Gaudet failed to object

---

[4] The district court, at sentencing, stated: "Two, the return to the Sheet Metal Worker's International Association of any monthly pension check to which he becomes eligible. The Court will

below and we must determine whether to review this alleged error only for plain error.

A review of the record indicates that the PSR specifically mentioned Gaudet's pension. In a section entitled "Fines and Restitution," the PSR detailed the maximum fines and fees to which Gaudet could be subject. It stated further that the court could order restitution for the full amount embezzled by Gaudet. This same section included a subsection entitled "Defendant's Ability to Pay" which listed Gaudet's assets and liabilities and calculated his net worth. This subsection referred to the pension in the following way:

> Gaudet applied for his pension through the Sheet Metal Worker's International and Local 11 union funds. The local union has denied this request as of May 20, 1991, and Mrs. Gaudet, who feels she is entitled to half of this pension, has contacted the New Orleans Legal Assistance Bureau for advice. A decision on the pension through the International Union is pending.

The Addendum to the PSR stated that Gaudet was entitled to $2,426 per month in pension payments.

We conclude that this information in the PSR put Gaudet on notice that the court could consider his pension as an available source of income from which to satisfy the fines or restitution. Accordingly, we conclude that Gaudet had an opportunity to object to the court's consideration of his pension to satisfy the restitution award.

---

consider as compliance with the procedure the defendant relinquishing to the Union any pension to which the defendant is legally entitled."

Because Gaudet had an opportunity to object below, his failure to do so restricts us to reviewing his present argument only for plain error. Based upon **Guidry v. Sheet Metal Worker's National Pension Fund**, 110 S.Ct. 680, 685 (1990), and **Herberger v. Schanbaum**, 897 F.2d 801 (5th Cir.), <u>cert. denied</u>, 111 S.Ct. 60 (1990), Gaudet argues that the anti-alienation provision of ERISA precluded the district court from ordering him to relinquish his pension. Gaudet has a substantial legal argument. In **Herberger**, we weighed ERISA's remedial provisions against its anti-alienation provision. We held that ERISA's anti-alienation provision precluded the district court from ordering the judgment against a trustee who had breached his fiduciary duties to a pension fund against the trustee's pension. **Id**. at 804.

But we need not decide whether Gaudet would prevail if we were permitted to consider his argument under a plenary review standard. Gaudet's failure to object precludes his relief. As we explained in **United States v. Lopez**, an appellant is entitled to relief under the plain error standard only when the error "examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." 923 F.2d at 50. As we stated in **United States v. Wicker**, 933 F.2d 284, 291 (5th Cir.), <u>cert. denied</u>, 112 S.Ct. 419 (1991), "[t]he burden of showing plain error is a heavy one, and this court will notice plain error only in exceptional circumstances" (citations omitted).

The judge's order permitting the government to satisfy the

restitution order from Gaudet's pension and thereby repay the pension funds he embezzled is certainly not counter intuitive. No judge or other legal scholar can be expected to have an intimate knowledge of every obscure rule of law. Thus, even if Gaudet is correct that ERISA's anti-alienation provisions preclude the use of his pension to satisfy his restitution obligation, the district court's error is not an obvious one. **See City of Newport v. Fact Concerts, Inc.**, 453 U.S. 247, 256 (1981) ("'Plain error' review . . . is suited to correcting obvious instances of injustice or misapplied law. A court's interpretation of the contours of municipal liability under § 1983 . . . could hardly give rise to plain judicial error since those contours are currently in a state of evolving definition and uncertainty.")

Thus, reviewing Gaudet's argument under the weak plain error lens, the district court did not commit reversible error in requiring Gaudet to relinquish his pension payments to satisfy his restitution obligation to the pension plans.

## IV.

For the reasons stated above, the sentence of the district court is affirmed.

AFFIRMED.