Stanley J. GAUDET and Audrey
Chaix Gaudet,

v.

SHEET METAL WORKERS' NATION-
AL PENSION FUND, the Sheet Metal
Workers' Local Unions and Councils
Pension Fund, and the New Orleans
Sheet Metal Workers' Local Union
No. 11 Pension Fund.

No. CIV.A.01–0718.

United States District Court,
E.D. Louisiana.

March 11, 2002.

See also 966 F.2d 959.

Herbert Victor Larson, Jr., Herbert V.
Larson, Jr., Attorney at Law, New Or-
leans, LA, Perry Roger Staub, Jr., Michael
Warren Hill, Taggart, Morton, Odgen,
Staub, Rougelot & O'Brien, LLC, New
Orleans, LA, for Plaintiffs.

William David Aaron, Jr., Richard Anthony Goins, Brian Eugene Sevin, Goins Aaron, PLC, New Orleans, LA, Stephen M. Rosenblatt, Sheet Metal Workers' Local Union No. 11 Pension Fund, Alexandria, VA, for National Pension Fund and New Orleans Sheet Metal Workers' Local Union No. 11 Pension Fund.

Marc Rifkind, Slevin & Hart, Washington, DC, William David Aaron, Jr., Richard Anthony Goins, Brian Eugene Sevin, Goins Aaron, PLC, New Orleans, LA, for Sheet Metal Workers' Local Unions and Councils Pension Fund.

## ORDER AND REASONS

DUVAL, District Judge.

Before this Court is plaintiffs' Response to this Court's Order (rec.doc. 35) rendered November 28, 2001 in which the Court: (1) denied plaintiff's Motion for Partial Summary Judgment (rec.doc. 18), (2) deferred ruling on plaintiffs' Motion for Summary Judgment as to Counterclaims Against Audrey Gaudet (rec. doc 17), (3) advised plaintiffs that it intended to enter judgment sua sponte in favor of defendants, and (4) directed plaintiffs to, within 10 days from the entry of the order and reasons, present any other arguments or evidence that it had in its possession to oppose such a motion in accordance with Fifth Circuit's decision in *Nowlin v. Resolution Trust Co.*, 33 F.3d 498, 504 n. 9 (5th Cir.1994) stating that, "[d]istrict courts may grant summary judgment sua sponte, 'so long as the losing party was on notice that she had to come forward with all of her evidence.'"

After a reviewing plaintiff's response and defendant's reply briefs, this Court affirms its original order and **DENIES** plaintiff's motion for summary judgment. Furthermore, plaintiff's (1) Motion for Summary Judgment as to Counterclaims Against Audrey Gaudet (rec.doc. 17), (2) Motion for Partial Summary Judgment (rec.doc. 31) and (3) Motion to Abstain (rec.doc. 32) are **DENIED** as moot.

## Background

The facts and procedural history surrounding the instant matter were laid out in this Court's original opinion of November 28, 2001 and are included in this opinion for ease of reference. Plaintiffs allege that they are entitled to pension benefits that were earned by Stanley during his employment as a sheet' metal worker. Named as defendants in this matter include: (1) the Sheet Metal Workers' National Pension Fund (NPF), (2) the Sheet Metal Workers' Local Unions and Councils Pension Fund (LUCPF), and (3) the New Orleans Sheet Metal Workers' Local Union No. 11 Pension Fund (Local 11). However, the Local 11 has since merged into the NPF. (Plans 1 and 3 will be collectively referred to in the Court's analysis as NPF)

Stanley was employed in the sheet metal trades in 1946 and became a member of the executive board of the Local 11 Union and served as its president. Between 1983 and 1989, Stanley embezzled funds from the Local 11 Union and its employee benefit plans. On March 21, 1991 Stanley pled guilty to 22 counts of embezzlement and theft and was sentenced to 18 years and 5 months in prison. The district court ordered Stanley to pay restitution in the amount of $2,750,538.87 to the Sheet Metal Workers' International Association. To satisfy this amount, the district court ordered Stanley to relinquish the pension funds to which he was entitled. Stanley argued on appeal that the anti-alienation provisions of ERISA prevented the district court from ordering him to relinquish his pension to fulfill the restitution amount, but because he did not object to the court's order at his sentencing, on appeal the Fifth Circuit upheld the district court's ruling under the "plain error" standard.

*United States v. Gaudet,* 966 F.2d 959 (1992).

Audrey has alleged that she had no knowledge of Stanley's illegal actions and explained that Stanley used the embezzled funds to pay his separate gambling debts and other separate expenses that did not inure to her benefit. Defendants, however, maintain that Audrey had knowledge of and benefitted from the substantial amount of money Stanley embezzled during their marriage. Audrey also contends that any amount of his pension fund Stanley was required to forfeit as restitution did not affect her half of the funds.

Stanley and Audrey have maintained their matrimonial domicile in Louisiana since they were married in March 1968. From March 1968 to May 2001 they lived in a community property regime. On May 14, 2001, plaintiffs entered into a Separation of Property Agreement approved by the state district court. The court's order purportedly fulfilled all requirements necessary to create a valid Qualified Domestic Relations Order (QDRO) and established Audrey as an "alternate payee" of half of Stanley's pension benefits. Specifically, the order establishing the QDRO held:

> ... that Audrey Gaudet is hereby recognized and is declared to be entitled to one-half of the pension benefits **guaranteed to Stanley J. Gaudet** by those certain pension plans established in his favor by the Sheet Metal Workers' Local Union No. 11 Pension fund...
>
> ...that Audrey Gaudet is hereby declared to be entitled to one-half of all pension benefit payments **due and payable to Stanley Gaudet** by The Sheet Metal Workers National Pension Fund, and The New Orleans Sheet Metal Workers' Local Union No. 11 Pension Fund from March 1, 1991 to the date of the signing of this judgment. Subsequent to the entry of this judgment, Audrey shall be entitled to receive one-half of all pension benefits **due and owing to Stanley J. Gaudet** until the time of his death...

Through the QDRO, Audrey claims to be the beneficiary of a half of the benefits that accrued to Stanley under the plans administered by defendants. The court's order presupposes that funds were "due and owing" to Stanley.

Even though he embezzled from its pension plans, Stanley applied for retirement benefits from the Local 11. However, the Local 11 denied his request and explained that it would be a breach of fiduciary duty to pay a pension benefit to an individual who had already taken an amount of money that exceeded what he would be owed in pension benefits. Plaintiff appealed the denial of benefits and requested reconsideration, but his request was denied on August 30, 1991. The record also states that in 1992, the NPF sent Stanley the requisite forms required to receive benefits and requested that they be returned in thirty days, but he never responded.

Stanley also applied to the LUCPF for retirement benefits during his prison term. The LUCPF directed him to complete and return certain forms within thirty days to be eligible for benefits, but he did not return them. After the entry of the state court judgment creating the QDRO, the LUCPF determined that the QDRO was not valid because it required payment of funds it was not legally required to disperse because Stanley had not complied with all administrative steps. Plaintiffs are entitled to an administrative appeal from that decision but have chosen to bypass that remedy.

The NPF also brought a civil action against plaintiff in the Eastern District (captioned *William Mazur, et al. v. Stanley Gaudet,* Civil Action No. 89–2723) to recover losses resulting from Stanley's wrongful conversion of plan assets. On

May 26, 1994 the court entered judgment in favor of the NPF against Stanley for $18,028,924 plus prejudgment interest running from September 30, 1993 through the date of the entry of judgment.

## Procedural History

### Actions and Arguments Raised in First Proceeding Before the Court

Plaintiffs filed the instant suit to require defendants to pay benefits allegedly owed to them and sought damages for (1) past due benefits, future benefits, interest, attorney fees and any other equitable relief, (2) bad faith breach of contract, (3) damages for mental anguish, lost income, and other damages for wrongful deprivation of benefits due them, (4) unjust enrichment and, (5) unlawful seizure of pension benefits.

In response, NPF lodged a counterclaim against plaintiffs seeking: (1) to offset pension funds owed to Stanley by NPF because he had embezzled an amount of money that exceeded what he would have otherwise been entitled to under his plan, (2) to require Audrey to restore to NPF any and all amounts she benefitted from as a result of Stanley's embezzlement, (3) an order from this Court that the anti-alienation provisions of ERISA did not prevent the offset of Stanley's pension benefits, (4) a declaration from the Court that no Louisiana law would prevent NPF from offsetting Stanley's pension, and (5) a judgment from the Court that the QDRO entered on behalf of Audrey was unenforceable.

Subsequently, plaintiffs filed a Partial Motion for Summary Judgment: (1) seeking declaration that Audrey was entitled to benefits from defendants as an alternate payee under the QDRO issued by the Twenty Ninth Judicial District for St. Charles Parish and (2) arguing that exhaustion of administrative remedies provided under the LUCPF plan would be futile. However, NPF claimed that plaintiff's Partial Motion for Summary Judg-

ment was moot because Audrey's rights under the QDRO were purely derivative of Stanley's rights to receive pension funds from the plan and Stanley was not entitled to receive any funds under the plans. Defendant (LUCPF) also asserted that were material issues of fact sufficient to justify denial of the Partial Motion for Summary Judgment because Audrey Gaudet failed to exhaust the administrative remedies required to receive benefits.

Plaintiffs also filed a Motion for Summary Judgment as to the counterclaims against Audrey Gaudet and asserted generally that: (1) the second and fifth counterclaim were governed by the civil enforcement provisions of ERISA and (2) because they were extinguished by the statute of repose, defendant should not be permitted to use them to offset NPF's obligation to pay Audrey under the terms of the QDRO. See 29 U.S.C. § 1132 and *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000).

The NPF, however, contended that there were issues of material fact sufficient to defeat the plaintiffs' Motion for Summary Judgment and argued that: (1) the counter claims may not be extinguished because 29 U.S.C. § 1113 limits the period during which an action may be commenced with respect to a fiduciary's breach of any responsibility, duty or obligation under Part 4 of ERISA, (2) while civil actions commenced under Title I of ERISA are enumerated in 29 U.S.C. § 1132(a), not all of those listed relate to Part 4, (3) the Court must examine the *nature of the civil action* under 29 U.S.C. § 1132(a) in order to determine whether it is an action with respect to a fiduciary breach or violation of Part 4, (4) the second counterclaim should be regarded as an act in recoupment that did not arise until plaintiffs filed the instant action to recover benefits and, and

(5) ERISA's Treasury Regulations recognize the validity of recoupment and posit that a counterclaim in the nature of recoupment is never time barred by the statute of limitations as long as the main action itself is timely.

### This Court's Initial Decision and Parties Post–Decision Arguments

In its original decision, this Court noted that the factual scenario of this case was distinguishable from others previously considered in this Circuit. Before announcing its resolution of the matter, the Court addressed the relevant jurisprudential history. First, the Court noted that in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court had determined that while 29 U.S.C. § 409(a) may provide relief for a breach of a fiduciary duty to a *plan*, it was not applicable to the case before it because the plaintiff had breached his fiduciary duty to the *union* (not the *plans* ). Therefore, the Court deferred on deciding whether 29 U.S.C. § 409(a)'s imposition of liability on a breaching fiduciary to "make good" any losses suffered by a plan because of the breach serves as an exception to 29 U.S.C. § 209(d)(1)—which prohibits assignment or alienation of benefits under a plan. However, the Court cautioned that courts should "loath to create equitable exceptions to legislative requirements...".

This Court also noted that in *McLaughlin v. Lindemann*, 853 F.2d 1307 (5th Cir. 1988), the Fifth Circuit held, in part, that ERISA precluded an offset to recover a judgment against a non-fiduciary for his participation in the breach of a fiduciary duty by a plan trustee. And, in *Herberger v. Shanbaum*, 897 F.2d 801 (5th Cir.1990), the Court determined that the anti-alienation provisions of ERISA precluded an offset against a participant's pension interest in an ERISA plan based on the participant's beach of fiduciary duty to the same

plan. The Fifth Circuit went on to distinguish the facts before it from those presented in *Crawford v. La Boucherie Bernard*, 815 F.2d 117 (D.C.Cir.1987), in which that court had carved out an exception to the anti-alienation rule and allowed a judgment predicated on a breach of fiduciary duty by a plan trustee to be offset against the trustee's pension benefits. Specifically, the *Herberger* Court declined to follow *Crawford* because: (1) the *Crawford* court's reliance on ERISA's legislative history to create an exception for trusts out of the anti-alienation provisions was not persuasive, (2) the jurisprudence relied on in *Crawford* was rejected by the Court in *Guidry*, and (3) the fact that Congress amended the ERISA statute to allow an exception to the anti-alienation rule for QDRO's, suggests that Congress will create exceptions where it sees fit and the courts should not do so on their own accord.

This Court also explained that other Circuits have wrestled with the issues presented herein including the Third Circuit in *Coar v. Kazimir*, 990 F.2d 1413 (3d Cir.1993) in which that Court held, as the Court did in *Crawford*, that ERISA anti-alienation provisions did not preclude pension plan trustees from withholding vested pension benefits from a beneficiary who was also a former trustee through a set off to recover damages incurred by the beneficiary's breach of fiduciary duty to the plan.

While this Court was aware of the cautioning language used by the Supreme Court in *Guidry* and the interpretation of that case in *McLaughlin* and *Herberger*, this Court found those cases distinguishable. For example, the petitioner in *Guidry* stole funds from his union, but not the plans themselves. In *McLaughlin*, the petitioner was a "non-fiduciary" who had knowledge of a breach of a trustee's fiduciary duty to the plan—but had not

actively committed any breach himself. Similarly, *Herberger* dealt with a fiduciary's liability to a third party seeking bonuses and salaries earned during his employment and the ability of the fiduciary's pension plan to recover, through an offset, money it was required to pay the third party. In none of the cases, then, has any court been presented with a factual scenario in which a fiduciary breached his duty to the *plan itself,* appropriated to himself *more* money than he would have been entitled to under his pension plan, and then claimed entitlement to even *more* retirement funds from the plan (whether the funds be for himself or his spouse).

Furthermore, the Court emphasized that the *Herberger* Court characterized the nature of the dispute before it as an attempt to "offset" one debt ostensibly owed to the opposing party for another debt. The petitioner in *Herberger*, for example, allegedly had vested rights in a pension plan and claimed he was entitled to his funds from it. Because he had breached a fiduciary duty to the plan, its representatives claimed petitioner owed the plan for the damages it had incurred—creating the classic offset paradigm. In the instant case, however, this Court reasoned that NPF does not have any financial obligation to pay Stanley Gaudet funds from his pension plan as that obligation was discharged when Mr. Gaudet embezzled the amount due him many times over. Because plaintiffs received and expended the entirety of the pension funds owed to Stanley, albeit illegally, the Court concluded there was no offset to be made and the rationale of *Herberger* was inapplicable.

This Court also noted that one of the purposes of ERISA was to protect *all* beneficiaries of a retirement plan. To allow plaintiff, in essence, to receive double benefits under the plan could penalize innocent beneficiaries and would defy common sense and the fundamental protections under ERISA. Thus, the Court determined that it would be ludicrous and entirely inequitable to require defendants to pay plaintiff pension benefits when he had already taken more than he would be owed under the plans.

Given the facts presented in this case and emphasizing that plaintiff had already received more than his pension entitlement, the Court held that because Stanley was not entitled to any pension funds, Audrey had no claim for derivative benefits. The Court noted that it was mindful of: (1) state community property law that entitles each spouse to one half of all "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse." Louisiana Civil Code Article 2338 and (2) the Fifth Circuit's decision in *McLaughlin v. Lindemann,* 853 F.2d 1307 (5th Cir.1988), which prohibited a pension plan from offsetting a wife's claim to a half of her husband's retirement benefits against damages owed by her husband for his breach of fiduciary duty. However, the Court found *McLaughlin* distinguishable because there had been no allegation that the husband in that case had already received more than the amount of his pension during their marriage. Therefore, the Court concluded that while Audrey certainly has a vested one half interest in the plan funds earned by her husband during their marriage, Stanley already received the *totality* those funds through his embezzlement—including her interest in them.

Finally, this Court held that plaintiff's partial motion for summary judgment as to the plan funds from the LUCPF should be denied pending fulfillment of all administrative remedies imposed by the LUCPF plan. The Court noted that its decision was consistent with Fifth Circuit law and relied in part on the reasoning in *Bour-*

*geois v. Pension Plan for the Employees of Santa Fe International Corporations,* 215 F.3d 475 (5th Cir.2000) and *Denton v. First Nat. Bank of Waco,* 765 F.2d 1295 (5th Cir.1985), in which the Court determined that an employee's failure to exhaust administrative remedies could not be excused on grounds of futility unless there was some demonstration that the plan administrator was hostile or biased against the claimant. Similarly, in *Meza v. General Battery Co.,* 908 F.2d 1262 (5th Cir. 1990), the Court held that plaintiffs seeking ERISA plan benefits are bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are.

The Court concluded its opinion by advising plaintiffs that it intended to deny its pending Motion for Summary Judgment and Motion for Partial Summary Judgment and render summary judgment in favor of the defendants and afforded plaintiffs ten days to present any new arguments to explain why summary judgment should not be rendered against them sua sponte.

### Plaintiff's Response to Court's Order of November 28, 2001

In its response memorandum, plaintiff raised several arguments urging this Court not to grant summary judgment in defendants' favor. First, plaintiffs argued that the restitution order entered by the district court and upheld by the Fifth Circuit in the criminal portion of this case *United States v. Gaudet,* 966 F.2d 959 (5th Cir.1992) was void because it contravened the anti-alienation provision of ERISA, was for an illegal amount, improperly awarded restitution to a party that had already received compensation (because NPF has allegedly been reimbursed for the amount taken by plaintiff), and illegally divested Audrey of her one half in Stanley's pension.

Next, plaintiffs reasoned the Court was without power to "offset" Stanley's pension benefits in favor of defendants based on his breach of fiduciary duties to their plans. Specifically, plaintiffs noted that it was not until August 7, 1997, that Congress amended ERISA at 29 U.S.C. § 1056(d)(4)(i) and (ii) to permit an exception to the anti-alienation rule and allow an "offset" in favor of a pension plan when a plan member has been ordered to pay the plan: (1) under a judgment of conviction for a crime involving the plan or (2) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of the subtitle. Plaintiffs explained that this amendment to ERISA created a new cause of action that did not exist at the times relevant to this litigation and posited that Congress intended the amendment to apply to transactions *after* its enactment. For this proposition, plaintiffs cited language from the Congressional Record stating that the "amendment is effective for judgments, orders and decrees issued, and settlement agreements entered into, on or after the date of enactment." 143 Cong. Rec. H. at 6604. Because the judgment in the civil action by the NPF against Stanley occurred on May 26, 1994 and the restitution order against Stanley in favor of NPF in the criminal proceedings was entered on July 24, 1991, plaintiffs argued that this Court did not have authority to render an "offset" in favor of the NPF and against Stanley's pension.

Plaintiffs also contended that this Court improperly interpreted 29 U.S.C. § 1109, which permits district courts to render "equitable relief" to pension plans when a party has caused losses to the plan, to trump the anti-alienation provisions of 29 U.S.C. § 1056. Instead, plaintiffs reasoned that when read *in pari materia,* the ERISA provisions did not, prior to the

1997 amendments, intend the "equitable relief" provision of § 1109 to eviscerate the forcefulness of the anti-alienation clause of the same statute. ·

Furthermore, plaintiff's argued that the Court's original opinion created an inequitable result because: (1) NPF has already been reimbursed the damages it incurred through its insurer (F & D) and to permit NPF to utilize the restitution order to reduce money owed to plaintiff would permit NPF to "double dip," (2) the opinions in *Guidry* and *Herberger* considered the relationship between liability under § 1109 and anti-alienation under § 1056 and did not permit the district courts to offset pension funds owed to a plan member because of a breach of fiduciary duty by that member to the plan, (3) the facts of the instant case are indistinguishable from *Guidry* and *Herberger,* and (4) it contravenes Louisiana community property law to divest Audrey of her one half interest in the pension plan funds.

Finally, plaintiffs alleged that exhaustion of administrative remedies under the LUCPF plan would be futile and emphasized that the its plan's description of the appeal process was insufficient because it does not specify the means by which an appeal is to be taken, the manner that the appeal will be adjudicated, or the time frame for such an appeal and decision.

### *Defendant, NPF's, Response to Court's Order of November 28, 2001*

In its response to the Court's November 28, 2001 order, defendant, NPF, argued primarily that the Court's grant of summary judgment in its favor would not violate ERISA because it would not constitute an "assignment or alienation" prohibited by 29 U.S.C. § 1056(d). Defendant based its argument on its interpretation of Treasury Regulation, 26 C.F.R. § 1.401(a)–13(c)(2)(iii), which provides that "any arrangement for the recovery of overpayments previously made

to a participant does ·not constitute an assignment or alienation." Because Stanley already received more than NPF would have owed him upon retirement, NPF reasoned that it should be entitled to make arrangements to recoup the overpayment. Thus, NPF characterized this action as a "recoupment of prior overpayments to a participant" and not and "assignment or alienation" prohibited by § ´1056.

NPF also explained that its pension plan only permits a participant to receive one type of pension and prohibits a participant from receiving two pensions. Were this Court to grant summary judgment in plaintiffs' favor, Stanley would receive, in essence, two pensions because he already took funds from the plan that total more than his pension would have been worth. Succinctly, defendant explained that:

> [I]t strains credulity and logic to believe, as plaintiffs assert, that ERISA's anti-alienation and assignment rules preclude the NPF from refusing to make any additional payments to Stanley Gaudet when he has already received payments well in excess of any pension benefits to which he was entitled under NPF's governing plan documents.

Thus, it is NPF's position that future payments to Stanley Gaudet would be "grossly inequitable."

LUCPF also filed a reply brief solely to attach its Summary Plan Description as an exhibit to demonstrate the specific appeal procedures that plaintiffs must take to be eligible to receive their benefits (rec. doc. 43, Ex. A at 22–24). In a subsequent response (rec.doc. 45), however, plaintiffs have argued that the attachment of the Summary Plan Description was inappropriate because it should have been served within ten days of the hearing date on plaintiffs motion. Furthermore, plaintiffs posit that the Summary Plan Description

is still insufficient because it does not show exactly what committees will hear appeals or demonstrate that an impartial body will adjudicate plaintiffs' grievances.

## ANALYSIS

The issue before the Court is whether plaintiffs have presented sufficient issues of fact to convince the Court that it should not grant summary judgment sua sponte in favor of defendants, NPF and LUCPF. After reviewing the memoranda and relevant law, this Court holds summary judgment should be rendered in favor of NPF and LUCPF.

■ First, the Court emphasizes that plaintiffs' characterization of its decision to grant summary judgment in favor of NPF as an impermissible "offset" is inaccurate. As noted in this Court's November 28, 2001 opinion, an "offset" can not exist when only *one* of two parties owes an obligation to the other. In the case at bar, NPF does not have any obligation to pay Stanley pension funds that would otherwise be due to him because that duty was discharged when Stanley embezzled funds from NPF in an amount greater than his pension would have been worth. Thus, the Court's decision merely prohibits Stanley from *"double dipping"* into NPF's plan funds as the NPF is no longer indebted to plaintiff for payment of his pension.

This analysis was also endorsed by the Ninth Circuit in *Parker v. Bain*, 68 F.3d 1131, 1141 (9th Cir.1995) when it reasoned, in part, that a plan participant forfeited his right to receive pension when his earlier breach of fiduciary duty to the plan had afforded him more funds than his pension was otherwise worth. Specifically, the Court stated:

> The district court properly determined that Parker [the petitioner] no longer has any interest in the Plan: Parker was a de facto fiduciary when he exercised control over Plan accounts; his embez-

zlement of those funds constituted a fiduciary breach, and the damages he owes to the Plan as a result of that breach exceed any money the Plan owed him. His interest in the Plan is extinguished. Parker therefore, has no colorable claim for benefits...

That same analysis leads this Court to conclude that the 1997 amendments to 29 U.S.C. § 1056(d) are inapplicable to the case at bar. Those amendments permit a district court to "offset" a participant's benefits under a pension plan when the participant is required to pay damages to the plan pursuant to a criminal or civil judgment arising after the enactment of the amendments. However, because there is no "offset" to be made against plaintiff in favor of NPF (as plaintiffs have already received the funds they otherwise would have been entitled to under the plan), the instant case falls outside of the scope of the amendments. Clearly, if Gaudet's defalcation had been a breach of fiduciary duty affecting the plan, other than prematurely distributing to himself monies far exceeding his vested interest, the 1997 amendments would be applicable.

Furthermore, plaintiffs' reliance on *Guidry* and *Herberger* is misplaced. As the Court explained its original opinion, the facts and holding of *Guidry* are distinguishable from the instant case as they reflect a situation in which a petitioner breached his fiduciary duty to the *union* and not its *pension plans*. Similarly, the facts of *Herberger* are dissimilar as the petitioner in that case caused damage to his pension plan through a breach of fiduciary duty, but had not personally taken funds from the plan that totaled more than his pension was worth. Thus, neither the Supreme Court in *Guidry* nor the Fifth Circuit in *Herberger* was presented with the argument lodged in the instant case—that the petitioner already received the

amount of his pension through his breach of fiduciary duty to the plan.

This Court also notes that under the terms of the NPF pension plan, "a person shall be entitled to only one pension." (NPF Opposition, p. 55, Section 5.12). Plaintiff, through his own illegal actions, took funds from his pension plan that equaled more than the amount that he would have been entitled to under his plan. To require NPF to provide plaintiff with more funds, now that he is legally eligible to receive them, would be to afford him a second pension a situation that no plan member is permitted to enjoy. Such a result could threaten other member's funds and flies in the face of common sense. As the district court noted in *Friedlander v. Doherty*, 851 F.Supp. 515, 522 (N.D.N.Y.1994), ERISA is set up in part to protect pensioners from misuse and mismanagement of funds and it is improper to permit a plan trustee, who prematurely withdrew funds from his pension plan, to later claim entitlement to more pension benefits and "invoke the protection of the anti-alienation provision and reap a windfall at the expense of other plan beneficiaries."

■ The Court notes, as it did in the original opinion, that while Audrey has an interest in one half of Stanley's pension benefits earned during the existence of the community, her right to those benefits is contingent upon Stanley being entitled to receive them. Because the Court has determined that Stanley already received his pension funds and is not entitled to any additional money from the NPF. Audrey's cause of action for her one half interest should be against Stanley—who through his own actions reaped the entirety of his pension benefits before they were due. Again, requiring the NPF to dole out funds to fulfill Audrey's one half interest in a pension plan that her husband already appropriated to himself would be improper

and could potentially harm other plan participants.

Finally, the Court notes that its decision does not incorporate defendant's argument that Treasury Regulation C.F.R. § 1.401(a)–13(c)(2)(iii) is applicable to the case at bar. That regulation provides that the ERISA proscriptions against assignment and alienation of pension funds do not apply to "an arrangement for the recovery by the plan of overpayments of benefits previously made to a participant." However, because the matter before the Court does not involve "an arrangement or settlement by which" defendants can recoup funds from plaintiffs, that statute is inapplicable. Granting summary judgment in favor of defendants only prohibits plaintiffs from receiving more pension benefits from defendants. It is not to be construed as a judgment entitling defendants to recover funds from plaintiffs. Those issues were addressed in the prior criminal and civil proceedings between the parties.

■ As noted above, this Court determined in its original decision that: (1) Audrey was required to exhaust her administrative remedies with LUCPF prior to bringing suit to enforce the QDRO she obtained in state court and (2) plaintiffs had not demonstrated fulfillment of those procedures would be futile or inadequate. After reviewing the Summary Plan Description attached by LUCPF in its reply brief, this Court is convinced that its initial decision was correct. LUCPF has set up a thorough review process which provides generally that: (1) upon 60 days of notice of denial of a claim, an applicant can request review of the decision through the plan administrator, (2) 60 days after receipt of a request for review of a denial of a claim, the Board of Trustees or a committed designated by the Board will hear the appeal and render a written decision,

unless an extension of 120 days is permitted, and (3) the notice of denial of a claim by the Board shall advise the claimant that he or she has 90 days to then challenge the denial in court.

Audrey chose to bypass all administrative steps to claim entitlement to pension benefits that may stem from her QDRO in the present case and summarily argued that the LUCPF procedures were futile and inadequate. However, the Fifth Circuit has consistently required that claimants under the provisions of ERISA complete the administrative steps before utilizing the court system. *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir.1993). The Court has required fulfillment of administrative procedures for several reasons including: (1) Congress intended ERISA trustees to be responsible for their actions, and not the federal courts, (2) requiring administrative proceedings provides a clear record for judicial review when and if it should become necessary, and (3) requiring resort to intra-plan remedies effects Congress' goal of minimal judicial intervention as the courts will only be authorized to engage in arbitrary and capricious rather than *de novo* review. *Brown v. Star Enterprise*, 1996 WL 450694 (1996) *citing Denton v. First Nat'l Bank*, 765 F.2d 1295, 1300 (5th Cir.1985). Because the LUCPF administrative procedures are clearly delineated, plaintiff should act in compliance with them before requesting this Court's attention to her claim.

The Court also concludes that LUCPF's attachment of the Summary Plan Description to its reply brief filed in response to plaintiffs' Memorandum in Response to this Court's November 28, 2001 Order was procedurally proper and notes that plaintiffs were given the opportunity to file an opposition to LUCPF's reply brief. However, plaintiffs' reply did not demonstrate that they would suffer any prejudice from the attachment of the plan description.

Accordingly, Plaintiffs' Motion for Summary Judgment and Motion for Partial Summary Judgment are **DENIED** and in accordance with *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 504 n. 9 (5th Cir.1994), summary judgment is rendered sua sponte in favor of defendants, NPF and LUCPF. Plaintiffs' Motion for Summary Judgment as to Counterclaims Against Audrey Gaudet (rec.doc. 17), Motion to Abstain (rec.doc. 32) and Motion for Summary Judgment (rec.doc. 31) are **DENIED** as moot.