Tomas FRIEDLANDER, Plaintiff,

v.

Francis H. DOHERTY and Patricia Doherty Maroney, Defendants.

No. 91–CV–0832.

United States District Court, N.D. New York.

May 12, 1994.

---

Cooper, Erving, Savage, Nolan & Heller, Albany, NY, for plaintiff; Mark E. Watkins, of counsel.

Green & Seifter, Syracuse, NY, for defendant Francis H. Doherty; Paul M. Predmore, of counsel.

McAuliffe & McAuliffe, Syracuse, NY, for defendant Patricia Doherty Maroney; Maura A. Flood, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

This action is brought by plaintiff in his capacity as trustee of two employee benefit plans qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"), against two former trustees, one of whom is alleged to have made substantial cash withdrawals from the plans without adhering to plan documents. Plaintiff seeks declaratory and equitable relief pursuant to 28 U.S.C. §§ 2201 and 2202, and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Presently before the court are defendant Doherty's motions for leave to amend his answer to raise the newly acquired defense of discharge in bankruptcy, and to dismiss plaintiff's claim against Doherty in its entirety. Doherty also moves for an order of contempt and sanctions against plaintiff.[1]

### I. BACKGROUND

Defendant Francis Doherty was president of F.H. Doherty Associates, Inc. ("the Company") until February 21, 1990. Along with defendant Patricia Doherty Maroney, Doherty also served as trustee of the Company's Pension and Profit Sharing Plans ("the Plans") until October 9, 1990, when they both were replaced by plaintiff pursuant to a resolution of the Company's Board of Directors.

Plaintiff filed the instant complaint on July 25, 1991, seeking a declaration of the parties' respective rights and obligations, an accounting by Doherty of funds received from the Plans, an award of damages to the Plans, and a declaration that plaintiff is entitled to charge the full amount of damages against the remainder of Doherty's vested benefit in the Pension Plan. Doherty admits that while he was a trustee of the Plans he withdrew $75,000 from the Pension Plan in four transactions between February 5, 1990 and April 23, 1990. Doherty further admits making withdrawals from the Profit Sharing Plan in the amount of $99,000 between May 22, 1989 and October 27, 1989. Plaintiff alleges that such withdrawals constituted prohibited transfers under ERISA and violated Doherty's fiduciary responsibilities as trustee of the Plans. Doherty disputes only plaintiff's contention that his withdrawals were unauthorized, claiming that the withdrawals were in fact authorized and thus not violative of § 9.2 of the Pension Plan.

On March 27, 1990 Doherty filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code. His bankruptcy action was converted to a Chapter 7 proceeding under the Bankruptcy Code on August 8, 1991, and Doherty was granted a discharge in bankruptcy on November 27, 1991.

### II. DISCUSSION

#### A. Doherty's Bankruptcy Argument

■ Defendant Doherty moves for leave to amend his answer in order to plead the defense of discharge in bankruptcy. Doherty further moves to dismiss plaintiff's claim against him in its entirety, arguing that any debt Doherty may owe to plaintiff was discharged through the bankruptcy proceeding, and that under section 524(a)(2) of the Bankruptcy Code plaintiff is enjoined from seeking relief in the instant action. Finally, because plaintiff continued to prosecute this action in the face of the discharge in bankruptcy, Doherty moves for an order of contempt and an award of attorney's fees and costs against plaintiff.

In response to Doherty's motion for leave to amend, plaintiff asserts that the proposed amendment to Doherty's pleadings would be futile, and therefore should be denied. Plaintiff argues that section 553 of the Bankruptcy Code preserves plaintiff's right to seek an offset in this case, and on that basis that the instant action is not barred by Doherty's discharge. Therefore, plaintiff concludes, Doherty's motion for leave to amend must be denied because his new defense will not affect the outcome of these proceedings.

■ When more than twenty days have elapsed since an original answering pleading was served, Federal Rule of Civil Procedure 15(a) allows amendment of a pleading only by

---

1. Plaintiff's motion for summary judgment against Francis Doherty, and for costs and attorney's fees, was withdrawn without prejudice at oral argument.

leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). While as a general matter the trial court has discretion whether or not to grant leave to amend, in exercising its discretion the court is required to heed the command of Rule 15(a) that leave should be "freely given when justice so requires." *Id.; Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993). Courts liberally grant motions for leave to amend, because where the movant "has at least colorable grounds for relief, justice ... so require[s] unless [the movant] is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc., v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. at 230). Nonetheless, where it appears that granting leave to amend will not be productive, the trial court is well within its discretion to deny leave to amend on the ground of futility. *Ruffolo,* 987 F.2d at 131 (citing *Foman,* 371 U.S. at 182, 83 S.Ct. at 230).

In the instant case, plaintiff refused to consent to Doherty's request to amend his answer. Doherty thus moves the court for leave to amend, claiming that his discharge in bankruptcy is dispositive of plaintiff's claim. See Proposed Amended Answer, Exhibit ("Exh.") C attached to Doherty's Notice of Motion, Document ("Doc.") 8. Doherty bases his motion for leave to amend on section 524(a)(2) of the Bankruptcy Code, which provides that a discharge in bankruptcy "operates as an injunction against the ... continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Doherty submits a copy of his discharge in bankruptcy, which was granted on November 27, 1991, and a letter to plaintiff's counsel explaining Doherty's position that the discharge mandates dismissal of the instant action. *See* Discharge, Exh. D attached to Doherty's Notice of Motion, Doc. 8; Letter dated December 13, 1991 from Attorney Predmore to Attorney Watkins, Exh. E attached to Doherty's Notice of Motion, Doc. 8.

Because plaintiff declined to stipulate to a dismissal of his action despite Doherty's discharge in bankruptcy, Doherty further moves for an order holding plaintiff in contempt, and imposing upon him the costs and attorney's fees incurred in defending the action.

Unfortunately for Doherty, the instant suit is largely unaffected by his discharge in bankruptcy. Section 553 of the Bankruptcy Code provides in relevant part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a). Section 553(a) reflects the great favor given to offsets by the Bankruptcy Code. *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1164 (2d Cir.1979) (the doctrine of offset "has long occupied a favored position in our history of jurisprudence"). The reason for this favor "is the anomalous unfairness, where debts are owed both ways between the debtor and the creditor, of permitting the bankrupt to collect all the debt owed to him while disallowing recognition of the bankrupt's debt to the creditor." *In re Gribben,* 158 B.R. 920, 924–25 (S.D.N.Y. 1993); *see Studley v. Boylston Nat'l Bank of Boston,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (right to offset is "grounded on the absurdity of making A pay B when B owes A"). Based on this reasoning, the court holds in the case at bar that Doherty's discharge in bankruptcy does not preclude plaintiff from seeking an offset for pre-petition debts. *E.g., Davidovich v. Welton,* 901 F.2d 1533, 1539 (10th Cir.1990); *Carolco Television, Inc. v. National Broadcasting Co.,* 963 F.2d 1269, 1276–77 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992).

Plaintiff has successfully pleaded a claim for offset. He alleges that debts are owed by the Pension Plan and the Profit Sharing Plan to Doherty, that debts are owed by Doherty to those Plans arising out of his unauthorized withdrawals of funds, and that the majority of those debts are mutual

obligations arising prior to the commencement of Doherty's bankruptcy action.[2] *See Posey v. United States Dep't of Treasury,* 156 B.R. 910, 914 (W.D.N.Y.1993) (interpreting elements of an offset claim under 11 U.S.C. § 553). All such debts fall within the scope of section 553(a). However, one transaction, in which Doherty withdrew $18,000 from the Pension Plan on April 23, 1990, arose post-petition. *See* Friedlander Affidavit, Doc. 11, at ¶ 8. Nonetheless, under Bankruptcy Code § 348(d), claims arising after the filing of a Chapter 11 petition and before conversion to Chapter 7 are treated "for all purposes" as claims arising pre-petition, unless they qualify as "administrative expenses" under section 503(b). 11 U.S.C. § 348(d). Because Doherty's withdrawal of funds from the Pension Plan clearly does not constitute an administrative expense, the court treats his April 23, 1990 withdrawal of funds as a pre-petition debt for purposes of determining whether offset will be allowed. The court holds that § 553(a) expressly allows plaintiff to proceed on his claim seeking to offset the April 23, 1990 withdrawal.[3]

Because plaintiff has stated a claim upon which the relief of offset can be granted as to both Doherty's pre-petition and his post-petition debts, Doherty's motion to amend his Answer in order to plead the defense of discharge in bankruptcy is futile, and therefore is denied. Further, Doherty's motion to dismiss, in so far as it is based on his argument of discharge in bankruptcy, is denied. In light of these rulings, Doherty's motion for an order holding plaintiff in contempt and imposing costs and attorney's fees on plaintiff is also denied.

### B. *Doherty's ERISA Argument*

■ Doherty also moves to dismiss plaintiff's claim based on the anti-alienation provision of ERISA. This motion requires the court to navigate through relatively uncharted waters, because the specific issue raised by the parties has yet to be addressed by the Second Circuit Court of Appeals. That issue is whether the broad remedial provision contained in ERISA § 409(a), 29 U.S.C. § 1109(a), overrides ERISA's anti-alienation provision, ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1). The court concludes that in this instance it does.

The aim of Congress in enacting ERISA was to create a comprehensive regulatory and remedial scheme to protect

> the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts.

ERISA § 2, 29 U.S.C. § 1001(b). Section 409(a) of the statute, 29 U.S.C. § 1109(a), imposes personal liability on one who breaches his fiduciary duties to a pension plan, stating that such a person is liable to "make good to such plan any such losses to the plan resulting from each such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Section 502(a), 29 U.S.C. § 1132(a), confers standing on, among others, any plan participant, beneficiary or fiduciary to bring suit for relief under § 409(a).

ERISA's anti-alienation provision, § 206(d)(1), 29 U.S.C. § 1056(d)(1), requires that, absent enumerated exceptions that are

---

**2.** Doherty's argument that plaintiff failed to plead a claim of setoff is belied by paragraphs 11 and 21 of the Complaint, which allege that "plaintiff is entitled to credit the unauthorized withdrawals made by Doherty against his interest" in the Pension Plan and Profit Sharing Plan respectively, and by the Wherefore Clause, which demands judgment "fixing the plaintiff's damages as trustee of the Plan, and directing that plaintiff be authorized to charge the full amount thereof against the remainder of Doherty's accrued benefit in the Pension Plan." Complaint, Doc. 1, ¶¶ 11, 21, and Wherefore Clause.

**3.** Even if § 348(d) did not mandate treatment of the April 23, 1990 debt as one arising pre-petition, the court would hold that the withdrawal was not discharged in bankruptcy. In his Order of May 30, 1991, and his Amended Order of June 5, 1991, Bankruptcy Judge Gerling waived the stay in bankruptcy in order that the instant case could be heard in this forum. Even if the stay had not been lifted, plaintiff would have been entitled to claim in bankruptcy court that the April 23, 1990 debt was a nondischargeable fraudulent debt or a debt that could validly be offset against plaintiff's mutual obligation.

inapplicable to this case, "[e]ach pension plan ... provide that benefits provided under the plan may not be assigned or alienated." Doherty argues that the anti-alienation provision precludes plaintiff from setting off Doherty's vested benefits under the Pension Plan and Profit Sharing Plan, regardless of the remedial language contained in § 409(a).

In analyzing this dispute, the court begins with the germinal case of *Crawford v. La Boucherie Bernard*, 815 F.2d 117 (D.C.Cir.), *cert. denied sub nom. Goldstein v. Crawford*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987), *reh'g denied*, 484 U.S. 1020, 108 S.Ct. 735, 98 L.Ed.2d 683 (1988). In *Crawford*, the D.C. Circuit carved out an exception to the general rule against alienation and allowed a judgment based on breach of fiduciary duty of a plan trustee to be offset against the trustee's vested pension benefits. 815 F.2d at 121. The court based its decision on three premises. First, the expansive language of § 409(a), 29 U.S.C. § 1109(a), provides the court with broad authority to fashion remedies for redressing fiduciary breaches. Second, the legislative history of ERISA strongly suggests that Congress intended traditional concepts of trust law to be applied to cases brought pursuant to ERISA. Under the common law of trusts, the court noted, a breaching trustee may be forced by other beneficiaries to make restitution for his breach out of his vested interest in the trust. Finally, the court acknowledged several exceptions, carved out by various courts, to the general rule against alienability. The court concluded from these exceptions that the rule against alienability was not immutable. *Id.* at 119–21.

In *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court refused to recognize an implied exception to ERISA's anti-alienation provision that would have permitted a labor union to impose a constructive trust on the pension benefits of a union official who pled guilty to embezzling funds from the union. Significantly, the union could not raise ERISA § 409(a) as a basis for its suit, since the union official breached a fiduciary duty to the union, and not to a pension fund. *Id.* at 373–74, 110

S.Ct. at 685. The union instead relied on the remedial provisions of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401–531, which states that a union's officers "occupy positions of trust in relation to such organization and its members" and therefore have a duty "to hold its money and property solely for the benefit of the organization and its members." 29 U.S.C. § 501(a). LMRDA § 501(b) provides standing for union members "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." 29 U.S.C. § 501(b). In rejecting the union's argument that the LMRDA superseded ERISA's prohibition on the alienation of pension benefits, the Court cited the maxim of statutory interpretation that " '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one. ...' " *Guidry*, 493 U.S. at 375, 110 S.Ct. at 686–87 (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974)). Thus, the general reference in the LMRDA allowing for "other appropriate relief" can not be said to override ERISA's express and specific directive that vested pension benefits may not be assigned or alienated. *Guidry*, 493 U.S. at 376, 110 S.Ct. at 687.

The Court also rejected the union's argument that an equitable exception to the anti-alienation provision was justified. In *dicta*, the Court instructed that

courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the

rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticality of defining such a standard reinforces our conclusion that the ·identification of any exception should be left to Congress.

*Id.* at 376–77, 110 S.Ct. at 687–88 (emphasis in original).

In the wake of *Guidry,* at least one court has declined to follow *Crawford,* holding that *Guidry* so undermines the D.C. Circuit's reasoning that *Crawford* is no longer valid precedent. *Herberger v. Shanbaum,* 897 F.2d 801, 804 (1990). In *Herberger,* the Fifth Circuit noted that at least two of the justifications behind *Crawford* were expressly negated by the Supreme Court in *Guidry.* First, the Court found no justification in ERISA's legislative history to justify any exception to its anti-alienation provision. Second, the Court explicitly rejected the holdings of some of the cases cited by *Crawford* to justify its conclusion that the anti-alienation provision is not immutable. *Id.*

Other courts have held that *Guidry* does not affect the holding of *Crawford.* *E.g.,* *Coar v. Kazimir,* 990 F.2d 1413 (3rd Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 179, 126 L.Ed.2d 138 (1993); *Pension Benefit Guarantee Corp. v. Solmsen,* 743 F.Supp. 125 (E.D.N.Y.1990). In *Solmsen,* the court swiftly dismissed the effect of *Guidry* upon *Crawford,* holding that because *Guidry* did not directly address the issue of whether ERISA's remedial provisions superseded its anti-alienation clause, *Guidry* had no effect on the reasoning of *Crawford,* which the court in turn adopted to resolve the claims before it. *Solmsen,* 743 F.Supp. at 129.

In *Coar,* the plaintiff was a former trustee and beneficiary of a pension fund. Plaintiff sued the current trustees of the fund, and the fund itself, seeking a declaration that the Fund violated ERISA's anti-alienation provision by withholding his vested pension benefits and applying them as a offset to his liability to the fund. The district court agreed and issued a declaratory judgment accordingly. In a thorough and thoughtful decision, the Third Circuit reversed the district court, holding that ERISA's anti-alien-

ation provision did not preclude an equitable offset of vested benefits of a trustee who breached his fiduciary duty to the fund. *Coar,* 990 F.2d at 1424.

The *Coar* court supported its holding with several rationales. First, the court distinguished the case before it from *Guidry* by noting that unlike the *Guidry* Court, the *Coar* court was faced with the task of reconciling two provisions within the same statute. Thus, instead of viewing ERISA's anti-alienation provision in isolation, the *Coar* court was required to interpret that provision in conjunction with ERISA's remedial provisions, and its overall purpose. In doing so, the court ruled that the legislative history of ERISA led to the conclusion that Congress' purpose would be better served by allowing offset than by proscribing it. *Id.* at 1419.

Second, the court referred to the *Guidry* Court's reliance on the canon of statutory interpretation under which a more specific statutory provision outweighs a general one. The *Coar* court then distinguished *Guidry* by holding that ERISA's remedial provisions actually are more specific than its anti-alienation provision, and therefore that the former supersedes the latter. *Id.* at 1420.

Finally, the *Coar* court concluded after an extensive review of the legislative history that the anti-alienation provision of ERISA was intended to be an "anti-garnishment provision," prohibiting "actions by third parties, such as a beneficiary's employer or creditors, and not ... recoupment by the pension plan." *Coar,* 990 F.2d at 1422. By narrowly construing the anti-alienation clause to exclude offset to the pension fund itself, the court avoided contravening the admonition of the *Guidry* Court that no generalized equitable exceptions should be created to the anti-alienation ·provision.

■ This court does not agree with the Third Circuit that ERISA § 206(d)(1) is more specific than ERISA § 409(a). As Judge Becker noted in a concurring opinion, both sections are specific, and neither logically can be said to supersede the other. *Id.* at 1425. Nor does the court agree that the legislative history of ERISA justifies a conclusion that the anti-alienation provision ap-

plies only to third party actions, and not to actions initiated by the pension fund itself. Section 206(a)(1) plainly states that pension benefits "may not be assigned or alienated." This plain statement must be given its plain meaning. It is unqualified, and neither this court nor any other court has authority to reword the provision to suit its tastes.

Nonetheless, the court agrees with the Third Circuit that Congress did not intend the anti-alienation clause to preclude an offset against the vested pension benefits of an unscrupulous trustee. In reconciling two equally specific provisions that in this instance work at cross-purposes, the court must strive " 'to find a reading that is consistent with the purposes of the entire statute considered as a whole.' " *Coar*, 990 F.2d at 1420 (quoting *Pyramid Lake Paiute Tribe of Indians v. United States Dep't of Navy*, 898 F.2d 1410, 1416 n. 15 (9th Cir.1990)). In essence, the court must decide whether it is more consistent with the overall goals of ERISA to enforce fiduciary responsibility of trustees at the expense of their vested pension benefits, in direct contravention of § 206(d)(1), or to protect the benefits of an allegedly faithless fiduciary, despite the clear statement of § 409(a) that such a fiduciary must make good on losses engendered by his breach of trust.

The Supreme Court has noted that "the crucible of Congressional concern [in enacting ERISA] was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 n. 8, 105 S.Ct. 3085, 3090 n. 8, 87 L.Ed.2d 96 (1985). Moreover, the purpose behind the anti-alienation provision, as divined by the scant legislative history this court has uncovered, was "[t]o further ensure that the employee's accrued benefits are actually available for retirement purposes...." H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4734.

█ In light of this information, the court holds that Congress intended for the remedial provisions of § 409(a) to apply to a trustee who violates his fiduciary duties. This con-

clusion is in keeping with the principle goal of ERISA to protect pensioners from misuse and mismanagement of funds, while a contrary conclusion would have the opposite effect by allowing an unscrupulous trustee to invoke the protection of the anti-alienation provision, and reap a windfall at the expense of other plan beneficiaries. In short, it defies common sense to allow a breaching fiduciary to collect from the very fund he fraudulently depleted. *See Solmsen*, 743 F.Supp. at 125 ("No good reason appears as to why [a plan] should have to pay benefits to a person who has wronged the Plan, and the beneficiaries of it, before he made good the wrong."); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) ("Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); 2A Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION § 45.12 (5th ed. 1992) ("A construction resulting in absurd consequences as well as unreasonableness will be avoided."). Because *Guidry* expressly left the instant issue unresolved, and because the court finds that the goals of ERISA are better served by allowing for offset in this instance, this court holds that plaintiff is entitled to pursue his claim on the facts pleaded in this case. Doherty's motion to dismiss the complaint on the basis of ERISA's anti-alienation provision therefore is denied.

## III. CONCLUSION

In sum, defendant Doherty's motions for leave to amend his Answer and to dismiss are denied. Doherty's motion for sanctions is also denied. The parties are directed to prepare for trial.

It is So Ordered.